**CONTINUATION OF APPLICATION FOR SEARCH WARRANT**

I, Geoffrey Yandl, being first duly sworn, hereby depose and state as follows:

**Introduction and Background**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following electronic devices and their contents:

    a. one red Apple iPhone active mobile smartphone, (**SUBJECT DEVICE 1**), seized from Tyshun FORREST upon his arrest;

    b. one black Apple iPhone active mobile smartphone with a yellow case, (**SUBJECT DEVICE 2**), seized from Cordero WALLER upon his arrest;

(collectively hereinafter the **SUBJECT DEVICES**). These items were seized on August 10, 2020 during a traffic stop conducted by the Michigan State Police on I-196 in Van Buren County. These items are currently in the custody of the Michigan State Police and are being stored at the Western Michigan Enforcement Team (WEMET facility) in Muskegon, Michigan.

2.  I am currently a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since November 2007. Through employment with the ATF, I have been involved in and/or conducted dozens of firearm and drug investigations including the execution of Federal Search and Seizure Warrants. I am currently assigned to the Grand Rapids Field Office (GRFO). The ATF GRFO is responsible for

1

the investigation of illegal firearms and drug activities in the area of the Western District of Michigan and I am therefore familiar with ATF investigations and illegal firearms and drug trafficking organizations operating in the Western District of Michigan.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested search warrant of the **SUBJECT DEVICES** and does not set forth all of my knowledge about this matter.

4. The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

5. I know from training and experience that drug traffickers frequently utilize mobile telephones to facilitate drug transactions. Drug traffickers rely upon voice phone services, SMS and MMS text messaging, social media instant messaging services, and electronic mail apps to communicate with suppliers, customers, and confederates. Mobile telephones are portable and phone providers often do not require purchasers or users of the devices to provide their true names and/or addresses, so drug traffickers often maintain multiple devices to avoid detection by law enforcement. Mobile phones often contain evidence indicative of drug trafficking, including records of incoming and outgoing calls; text messages; photographs of narcotics, coconspirators, or currency; and, in the case of "smart phones," Global Positioning System ("GPS") data indicating the location of the device at given points in time.

6.  I submit this application in part based on personal knowledge derived from this investigation and from numerous other sources, including but not limited to: information from a confidential source; discussions with and review of reports and information submitted by other law enforcement personnel; physical surveillance conducted by law enforcement agencies reported to me directly or indirectly; and a review of records checks and database queries from federal and local law enforcement agencies.

7.  The statements contained in this continuation are based in part on: (a) my personal participation in this investigation; (b) information provided by other law enforcement officers, to include the Federal Bureau of Investigation (FBI), West Michigan Enforcement Team (WEMET), and Muskegon Violent Crimes Task Force; (c) surveillance reports; (d) criminal history records; (e) information from confidential source(s); and (f) my training and experience and the training and experience of other law enforcement agents.

## Probable Cause

8.  This continuation is based on an investigation into the drug trafficking activities of TYSHUN FORREST, KIARA TAYLOR, and CORDERO WALLER.

9.  On February 16, 2020, Silent Observer received a Tip (ID#1196-H4002) that "Tyshun Forrest" sells heroin in large quantities. The Tip identifies FORREST's phone number as (231) 445-3403.

10. On March 20, 2020, a subpoena return from AT&T Mobility indicated the number had been serviced by them since January 25, 2020. The subscriber information was listed as Kiarashanice Taylor at 2109 Austin Street, Muskegon Michigan, 49444. A previous subpoena return from Sprint PCS had showed that from November 2017 through January 2020, the number had been serviced by Sprint PCS and during that period, subscriber records for that cell phone list a registered name as "Tyshun Forrest" with an address of 2109 Austin Street, Muskegon, Michigan 49444.

11. On February 24, 2020, an undercover detective contacted FORREST on the cell phone number (231) 445-3403 and ordered a quantity of heroin. FORREST agreed to the sale and arranged to meet the undercover detective on Jarman Street in Muskegon, Michigan.

   a. FORREST arrived as agreed driving a Ford Fusion (Michigan registration 2MCX72). The undercover detective entered FORREST's vehicle and provided him with $80. FORREST was the only occupant.

   b. FORREST provided the undercover detective with a paper bindle containing suspected heroin. The product tested positive for heroin and Fentanyl. The undercover detective positively identified FORREST from a known photograph.

12. On February 27, 2020, an undercover detective contacted FORREST on the cell phone number (231) 445-3403 and ordered a quantity of heroin. FORREST agreed to sell the undercover detective two grams of heroin for $300.

    c. FORREST directed the detective to meet him at the "same spot". FORREST arrived driving the same Ford Fusion. The undercover detective entered FORREST's vehicle. FORREST was the only occupant.

    d. The detective provided FORREST with $300 and FORREST provided the detective with a corner tie baggie of suspected heroin. The product tested positive for heroin and Fentanyl.

13. On March 3, 2020, an undercover detective contacted FORREST on the cell phone number (231) 445-3403 and ordered a quantity of heroin. FORREST agreed to sell the detective two grams of heroin for $300.

    e. FORREST directed the detective to meet at a parking lot on East Sherman Boulevard. FORREST arrived driving the Ford Fusion. The undercover detective entered FORRST's vehicle. FORREST was the only occupant.

    f. The detective provided FORREST with $300 and FORREST gave the detective a corner tie baggie of suspected heroin. The product tested positive for heroin.

14. On May 7, 2020 an undercover detective contacted FORREST on the cell phone number (231) 455-3403 and ordered a quantity of heroin. FORREST agreed to sell the detective $80 worth of heroin.

    g. FORREST directed the detective to meet at on Jarman Street near Laketon Avenue. The detective found FORREST at a gas station on

Laketon Avenue. FORREST was driving the Ford Fusion. FORREST was the only adult occupant, two minor children were observed in the vehicle.

    h. The detective met with FORREST and exchanged $80 for a quantity of heroin. The product tested positive for heroin.

15. On May 18, 2020, a subpoena return from AT&T Mobility indicated the number is still serviced by them. The subscriber information was listed as Kiarashanice Taylor at 2109 Austin Street, Muskegon Michigan, 49444.

16. On June 3, 2020, an undercover detective contacted FORREST on the cell phone number (231) 455-3403 and ordered a quantity of heroin. FORREST agreed to sell the detective one gram of heroin for $175.

    i. FORREST directed the detective to meet at on East Sherman Boulevard. FORREST arrived as agreed and was a passenger in a Chevrolet Equinox (bearing Missouri registration ED4K0E). The vehicle was driving by a female identified as KIARA TAYLOR. A check of the Missouri registration found that the vehicle is owned by a car rental company.

    j. The detective met with FORREST and TAYLOR and exchanged $175 for a quantity of heroin. The product tested positive for heroin.

17. In June of 2020, investigators talked to a source of information (SOI) who wished to remain anonymous.[1] The SOI stated s/he knew information about narcotics trafficking in Muskegon. The SOI provided the investigators with the following information:

   a. TYSHUN FORREST is trafficking large quantities of narcotics, including heroin, in the Muskegon area. FORREST resides on Austin Street. FORREST often uses rental vehicles to facilitate his narcotics trafficking.

   b. The SOI reported receiving 50 grams of heroin from FORREST on two occasions to resell for profit. FORREST is purchasing a "brick" of heroin each week from an unknown source of supply in the Chicago, Illinois area. The SOI said s/he saw FORREST with a "brick" of heroin within the past two weeks.

   c. This SOI has repeatedly provided reliable and verifiable information in the past, and the SOI gave information about FORREST that investigators knew to be true or were able to verify.

18. On June 6, 2020, the Michigan State Police reviewed automatic license plate reader (LPR) data for the State of Michigan. An LPR is posted on Interstate 94 (I-94) near mile marker 28. The following information was located

---

[1] The name and identity of the SOI is known to law enforcement, who personally spoke to him/her.

for the Chevrolet Equinox with Missouri registration plate ED4K0E (this is the vehicle FORREST was in during the June 3, 2020 undercover buy).

      k. May 31, 2020, 12:44 p.m., the vehicle was westbound on I-94.

      l. May 31, 2020, 11:57 p.m., the vehicle was eastbound on I-94.

      m. On June 5, 2020, 7:15 p.m., the vehicle was westbound on I-94.

      n. On June 7, 2020, 8:42 p.m., the vehicle was eastbound on I-94.

    19. On June 24, 2020, your affiant along with FBI and Muskegon Police partners conducted visual surveillance on FORREST. At 9:53 p.m., a grey Dodge Durango bearing an Illinois registration plate arrived at FORREST's residence. According to motor vehicle records, the Durango was registered to Valentin CORTES, a 54-year-old male, 3528 West 57th Place, Chicago, Illinois.

    20. According to AT&T phone records for FORREST, between June 15 and June 30, FORREST had communication with (312) 487-8630. A check of public and law enforcement databases found the number had been registered to or associated with Valentin CORTES, a 28-year-old male, 3528 West 57th Place, Chicago Illinois, the son of the registered vehicle owner.

    21. A check of Chicago Police Department criminal records history found Valentin CORTES, a 28-year-old male, is a known member of a Chicago street gang. CORTES has 17 prior arrests including 5 arrests for drug violations.

    22. On June 30, 2020, physical surveillance was conducted on FORREST. Investigators were monitoring FORREST's cell phone location and determined that he had travelled to Chicago, Illinois on June 30th and was

returning to Muskegon on July 1st.

    a. At 1:35 a.m. a silver Dodge Journey rental vehicle driven by FORREST was observed traveling north on US-31 in Muskegon County;

    b. At 1:42 a.m. the vehicle arrived at 2109 Austin Street;

    c. At 1:55 a.m. a dark SUV bearing Michigan registration DHB5379 arrived at 2109 Austin Street.

    d. At 2:20 a.m. the SUV left Austin Street. The vehicle was determined to be a black 2014 Chevrolet Equinox registered to La Tanj Niq Mitchell, the girlfriend of CORDERO WALLER.

23. I reviewed cell phone toll records for FORREST's cell phone. I learned that between June 14 and July 13 FORREST and WALLER had contact 230 times.

24. I reviewed cell phone location data for FORREST's cell phone that occurred on the following days:

    a. June 30, 2020, at approximately 9:04 p.m., FORREST's cell phone location was 1.6 miles driving distance from 3528 West 57th Place, Chicago, Illinois, the registered address of Valentin CORTES.

    b. July 14, 2020, at approximately 7:13 p.m., FORREST's cell phone location was 3.0 miles driving distance to Valentin CORTES' address.

      c. July 17, 2020, at approximately 6:00 p.m., FORREST's cell phone location left Muskegon County and traveled into the Chicago metropolitan area.

25. On July 23, 2020, your affiant along with the FBI and Muskegon Police conducted visual surveillance on FORREST in the Muskegon area. FORREST was observed travelling around Muskegon to various locations in a rental vehicle, a silver Mazda CX-5, Michigan registration plate EFQ4036.

26. On July 27, 2020, the Michigan State Police reviewed automatic license plate reader (LPR) data for the State of Michigan. An LPR is posted on westbound I-94 near mile marker 27. The following information was located for the Mazda CX-5, Michigan registration plate EFQ4036.

      a. July 14, 2020, 5:20 p.m., the vehicle was westbound on I-94.

      b. July 17, 2020, 7:38 p.m., the vehicle was eastbound on I-94.

27. On August 10, 2020, at 7:46 a.m., surveillance video at 2109 Austin (FORREST's and TAYLOR's residence) captured a gray Mitsubishi SUV leaving the driveway. At 8:22 a.m. FBI Agent Matthew Eagles, utilizing court authorized cell phone location information, was alerted that FORREST's cell phone was travelling south on US-31 out of Muskegon County. Subsequent cell phone location information showed that FORREST's phone continued through southwest Michigan, into Indiana, and then Illinois. Investigators suspected that FORREST was traveling to meet with a drug supplier in Chicago, Illinois.

    a. I received information from Avis / Budget car rental that KIARA TAYLOR rented a gray Mitsubishi Eclipse Crossover bearing Colorado license plate BRV144.

    b. A check of Michigan State Police LPR data found that the vehicle was travelling west on I-94 near the Michigan / Indiana border at 9:24 a.m.

    c. At 11:58 a.m., FORREST's cell phone location was 2.4 miles driving distance from 3528 West 57th Place, Chicago, Illinois, the registered address of Valentin CORTES.

    d. At 1:39 p.m., FORREST's vehicle was observed by surveillance investigators driving east on I-94 in Indiana at Exit 26. Investigators continued physical surveillance of FORREST.

28. On August 10, 2020, at approximately 2:20 p.m., uniform Michigan State Police troopers conducted a traffic stop on the subject vehicle northbound on I-196 near 24th Avenue.

    a. The driver was identified as CORDERO WALLER. The passenger was identified as TYSHUN FORREST. The subjects gave conflicting statements about their destinations and purpose and routes of travel.

    b. Neither occupant was identified as an authorized driver of the rental vehicle. Troopers contacted Avis car rental company. Avis requested the vehicle be impounded.

      c.   An inventory search of the vehicle located a backpack containing approximately 427 grams of cocaine and $6,095 in U.S. currency. FORREST and WALLER were arrested and in possession of the **SUBJECT DEVICES**.

29.    The **SUBJECT DEVICES** are currently in the lawful possession of the Michigan State Police. They came into MSP possession during the traffic stop, investigation and subsequent arrests of FORREST and WALLER. The **SUBJECT DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **SUBJECT DEVICES** first came into the possession of the MSP.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

31.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of their use, who used them, and when they were used. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

33.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICES** described in Attachment A to seek the items described in Attachment B.